UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| BARBARA MASON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 06-94-DCR |
| ) | |
| V. ) | |
| ) | |
| BFS DIVERSIFIED PRODUCTS, LLC, ) | **MEMORANDUM OPINION** |
| d/b/a, FIRESTONE INDUSTRIAL ) | **AND ORDER** |
| PRODUCTS CO., and RON CLOUSE, ) | |
| ) | |
| Defendants. ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Defendant BFS's Motion to Dismiss or, in the alternative, Compel Arbitration. [Record Nos. 8, 10] The Plaintiff has failed to respond to this motion within the time provided by the Local Rules. Accordingly, the Court has proceeded to review the requested relief without the benefit of a response. Because the Plaintiff's claims are subject to an arbitration agreement, the Court will grant the relief requested by the Defendant.

**I.   BACKGROUND**

Taking the allegations in Plaintiff's Complaint as true, and relying on the Motion to Dismiss except where contradicted by the Complaint, the following facts are relevant to the pending motions.

#### A. Barbara Mason's Employment

Plaintiff Barbara Mason began her employment at Bridgestone's Williamsburg, Kentucky, plant on September 12, 1994. (Complaint, ¶ 6). In 2003, Mason began being "cross-trained" for a position in the cure room. However, because of excessive heat in the cure room and Clouse's alleged critical supervision, Mason began feeling dizzy and/or faint from the outset. On April 1, 2003, Mason passed out while she was in the cure room and fell to the concrete floor, resulting in elevated blood pressure and back and shoulder injuries.

Both prior to and after this fall, Mason complained to her company supervisors, the head of Personnel, and the nation hotline about Clouse's inappropriate advances. Mason also complained that her rebuffing of Clouse was the cause of her transfer to the cure room. The company initiated an investigation but the results are unclear.

Mason began treatment with a number of doctors from April 14, 2003, through her termination from BFS. On June 27, 2003, Dr. Steven Keifer placed Mason on light duty until July 15, 2003. Mason's treating physician then twice placed her on work leave, from July 11, 2003 until September 15, 2003. On September 26, 2003, Mason received a termination letter. However, that letter was rescinded in October, pending receipt of her medical information pursuant to the Family Medical Leave Act ("FMLA").

BFS admits that Mason was on medical leave from July 11, 2003, until February 6, 2004, when her physician released her for work. [Record No. 9, pg. 5] Following her release, BFS alleges that she "was scheduled to work on February 9, 10, 14, 15, 18, 19, 20, 23, and 24. It appears that the Plaintiff did not appear for any of these scheduled shifts and she did not write,

call, or submit any additional certifications or requests for continued leave." *Id.* BFS alleged this violated their company absence policy. Based on Mason's alleged failure to appear for work, BFS accepted her voluntary resignation on February 24, 2004, per the Attendance Policy. *Id*.

### B.  Employee Dispute Resolution plan ("EDR plan")

In September 1995, BFS alleges that it instituted and mailed an EDR Plan to all Williamsburg Plant employees, along with a memorandum from the company. The memorandum informed employees that, among other things,

> the Company has developed the enclosed Bridgestone/Firestone, Inc. Employee Dispute Resolution Plan. Through this Plan, employment disputes that are not resolved informally are directed to Mediation and then Arbitration, both under the auspices of the American Arbitration Association, rather than to the court system or to government agencies.

[Record No. 9, pg. 3-4]. It went on to note that "[b]y continuing your employment after October 1, 1995, the effective date of the Plan, you agree to follow the terms of the Plan." *Id.*

After these written communications, William E. Deal, the former Human Resources Representative for the Williamsburg Plant, conducted a series of shift meetings with all employees regarding the EDR Plan. During these meetings, Deal explained to employees that the EDR Plan was the method by which BFS intended to resolve all employment disputes. Deal also invited employees with questions or concerns about the EDR Plan to see him personally. *Id*.

BFS alleges it again reminded its employees of their obligations under the EDR Plan in 2002, when BFS implemented a revised employee handbook. The Plaintiff was given and

required to review the Firestone Industrial Products Associate Handbook (the "Handbook"). The Handbook provides at page 23:

> The Employee Dispute Resolution Plan establishes procedures for the resolution of disputes that arise during the application process, during employment, and after termination of employment. By entering into or continued employment with the Company, associates consent and agree to be bound by the terms and procedures of this plan.

*Id*. at 4. BFS alleges that Mason expressly acknowledged in a signed writing that she received the Handbook.

## II.     STANDARD OF REVIEW

Under the Federal Arbitration Act, 9 U.S.C. § 2, ("FAA"), a written agreement to arbitrate disputes which arises out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (internal citations omitted). The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 280 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 52-54 (1995).

It is well-settled that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 932 (6th Cir. 1998). Further, courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Id.* at 626; *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1990).

Likewise, any ambiguities in contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### III.   ANALYSIS

In *Stout v. J.D. Byrider*, *supra*, the Sixth Circuit established a four-part test for determining when arbitration should be compelled:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, at 714.

The first two parts of the *Stout* arbitrability test are intertwined. Part one requires that the Court determine the existence of an agreement to arbitrate. In part two, the Court must review the scope of that agreement. Because both are based on contract interpretation, both are legal questions. *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d 474, 476 (10th Cir. 1996).

Under the FAA, "a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute." *Id.*; see 9 U.S.C. § 2. Here, Mason has not denied that she was a party to BFS's EDR Plan. Thus, the question becomes one of the scope of that agreement: whether it encompasses the dispute at hand. *Republic of*

*Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477 (9th Cir. 1991).  The Court must address this question of arbitrability,

> with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors*, 473 U.S. at 626.

Here, Mason alleges that BFS retaliated against her, wrongfully discharged her, and committed conduct so outrageous as to cause severe emotional and physical distress.  [Record No. 1, pgs. 8-10]  The actions giving rise to these claims all arose in Mason's employment with BFS.  All would certainly be covered under the EDR plan, which requires that all "employment-related legal claims" be arbitrated.  [Record No. 9, pg. 3] Thus, each of these claims is covered by the EDR plan.

Under the third part of the *Stout* test, the Court must determine if Congress intended Mason's federal statutory claims under the FMLA to be nonarbitrable.  The FAA applies to all employment contracts which parties have agreed to arbitrate except those of "seamen, railroad workers, and [other classes] of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-601 (6th Cir. 1995).

There is no suggestion in Mason's Complaint that her position was related to the actual transport of goods in interstate commerce. Likewise, her claims are not disqualified from arbitration because they raise claims under the Family Medical Leave Act (FMLA). "A district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000). Absent clear congressional intent to exempt the enforcement of statutory rights from the FAA, claims arising under specific statutes are subject to arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The Sixth Circuit has yet to rule specifically that claims arising under the FMLA should not be subject to arbitration. However, other courts in this circuit have determined that there was no congressional intent to exempt FMLA claims from arbitration, adopting the Fourth Circuit's reasoning in *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997). *See, e.g., Brinkerhoff v. Zachry Constr. Corp.*, 2005 U.S. Dist. LEXIS 33333 (S. D. Ohio 2005); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp 2d 868, 881 (S.D. Ohio 1998). The undersigned finds these authorities persuasive. There is no indication that Congress intended claims under the FMLA to be exempt from arbitration under the FAA. Therefore, to the extent any of Mason's claims arise from the FMLA, they are subject to arbitration.

Under the fourth part of the *Stout* test, once it has been determined that arbitration is compelled on all claims pursuant to the terms of the employment agreement, dismissal is appropriate. *BBS Techs., Inc. v. Remington Arms Co.*, 2005 U.S. Dist. LEXIS 29412 (E.D. Ky. 2005); *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). However, because this

dismissal does not reach the merit of the claim, it is without prejudice. This is because, having compelled arbitration on all issues in this case, the Court must dismiss for lack of jurisdiction under Fed. R. Civ. Pro. 12(b)(1). *Bauer v. RBX Industries, Inc.*, 368 F.3d 569, 581 (6th Cir. 2004). Accordingly, the parties shall proceed to arbitration pursuant with the terms of the agreement. The defendants' motion to compel arbitration under 9 U.S.C. § 4 will be granted.

### IV. CONCLUSION

For the reasons stated herein, it is **ORDERED** as follows:

(1) The parties are **DIRECTED** to proceed to arbitration under the terms of the Employee Dispute Resolution Plan.

(2) The Defendant's Motions [Record Nos. 8, 10] are **GRANTED.**

(3) This action shall be **DISMISSED**, without prejudice, and stricken from the Court's docket.

This 13th day of April, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge